*[1191]
 
 JOSEPH, J.
 

 Defendant appeals his conviction for robbery in the first degree (ORS 164.415) after a jury had returned guilty verdicts on that charge and on a charge of burglary in the first degree, which arose out of the same criminal episode. Defendant assigns as error: (1) the admission of certain tape recorded statements offered by the state for the purpose of impeaching one of its own witnesses; and (2) the disposition of the burglary charge by the trial court.
 

 The incident involved defendant and a male companion (Grever), defendant’s girlfriend and the complainant. Defendant’s girlfriend met complainant at a tavern and, according to his testimony, she agreed to come to complainant’s motel room later in the evening to engage in sexual activity for a price. Complainant left the tavern and returned to his room. Defendant’s girlfriend arrived there several hours later. Once inside, she noticed that complainant had a gun and urged him to put it away. After he put the revolver under the mattress, she stepped outside the room for a couple of minutes. Her actions made complainant suspicious, so while she was out he retrieved the gun and placed it under a pillow at his side where he was sitting on the bed. When defendant’s girlfriend returned she sat down beside complainant and they began to talk. Suddenly defendant kicked the door open and he and Grever burst into the room. Evidence produced at the trial suggested that defendant was carrying a knife as he entered the room. As defendant stood over him, complainant produced the revolver and fired a shot which hit defendant in the hand. Defendant and Grever fled from the room, and defendant’s girlfriend followed very shortly thereafter. Defendant was apprehended at a hospital where he had gone for treatment.
 

 The theory of the state’s case was that defendant, his girlfriend and Grever had conspired to take complainant’s money — by force if necessary — and that
 
 *[1192]
 
 as a part of their scheme defendant’s girlfriend had gone to complainant’s motel room posing as a prostitute.
 

 When called as a witness by the state, defendant’s girlfriend denied that she agreed with complainant to go to his motel room to engage in sex. She also denied that she had been driven to the motel by defendant and Grever; she testified instead that she had hitchhiked there with a stranger. She said that she did not make any plans with defendant or with Grever to pose as a prostitute or to help take complainant’s money. In fact, she testified that she did not even see defendant on the evening in question.
 

 Following this testimony, the prosecutor and defense counsel approached the bench, where the prosecutor expressed his intention to impeach the witness by confronting her with statements given to a police officer shortly after the incident which were inconsistent with the testimony she had given on the stand. Defense counsel objected on the ground that the state had not been surprised or sufficiently prejudiced by the girlfriend’s testimony to permit such impeachment. The court overruled the objection.
 

 In order to lay a foundation for the introduction of the prior inconsistent statements, the prosecutor asked the witness a series of questions, inquiring each time whether she recalled making a particular statement to a particular police officer at a particular time shortly after the incident.
 
 [1]
 
 To one such question she replied in essence "yes,” but to each of the others she responded that she did not remember making the statement.
 

 
 *[1193]
 
 The state then called to the stand the police officer who had interrogated defendant’s girlfriend shortly after the incident. Over defendant’s objection that the state’s case was not sufficiently prejudiced by the girlfriend’s "I don’t remember” answers, the police officer was permitted to play portions of a tape recording which showed that the girlfriend had stated to the officer that she had agreed with complainant to go to his room for the purpose of prostitution, that she had been driven there by defendant and Grever and that they had planned to take defendant’s money. The jury was instructed before the officer played the statements and again before they retired for deliberation that these statements were to be considered only on the issue of the girlfriend’s credibility.
 

 On appeal the defendant has abandoned his contention that the state was required to show it was surprised by the witness’ testimony before it could be allowed to impeach its own witness. He now argues only that in light of the witness’ "I don’t remember” answers to the questions concerning her prior statements to the police officer, the state’s case was not sufficiently prejudiced to permit the introduction of the taped statements for the purpose of impeachment. In support of this argument the defendant cites
 
 Rhodes v.
 
 Harwood, 273 Or 903, 544 P2d 147 (1975), and
 
 State v. Merlo,
 
 92 Or 678, 173 P 317 (1919).
 

 Defendant misconceives the conditions which permit impeachment of one’s own witness under ORS 45.590,
 
 [2]
 
 which are that the witness’ testimony must relate to a material matter and must be prejudicial to the case of the party who has called him. There is no contention that the testimony in question did not relate to a material matter. The requirement of prejudice to the state’s case was fulfilled by the
 
 *[1194]
 
 witness’ testimony that she did not agree to go to complainant’s room for the purpose of prostitution, that she hitchhiked to the motel with a stranger and did not ride with defendant and Grever, that she did not make plans with defendant or Grever to rob complainant and that she did not even see defendant on the evening in question.
 

 Merlo
 
 is inapposite. As noted in
 
 Rhodes, Merlo
 
 was a case in which the witness gave no affirmative testimony prejudicial to the party who had called them. In
 
 Merlo,
 
 for example, the state’s witness replied "I don’t know” when asked by the state’s attorney who started a particular quarrel which resulted in a murder. In
 
 Tauscher v. Doernbecher Mfg. Co.,
 
 153 Or 152, 56 P2d 318 (1936) the witness answered "no” when asked if he had seen the alleged assault. In those cases impeachment was not allowed, but in this case, the witness’ testimony on material matters, summarized above, had prejudiced the state’s case, opening her to impeachment. The "I don’t remember” answers were in response to questions asked concerning the prior inconsistent statements and were the equivalent of "No, I did not say that” for the purpose of allowing the state to introduce the collateral proof of the statements through the officer. McCormick, Evidence 72, § 37 (2d ed E. Cleary 1972). The taped statements played by the officer were limited to those which the girlfriend had denied remembering and were, therefore, properly admitted for the purpose of impeachment.
 

 In defendant’s second assignment of error he asserts that the trial court failed to "merge the crimes of robbery in the first degree and burglary in the first degree for the purposes [sic] of conviction.” The sentencing order clearly indicates that on the state’s election defendant was sentenced on the robbery charge and that the burglary charge was merged with the robbery charge for the purpose of sentencing.
 

 Affirmed.
 

 [1]
 

 ORS 45.610 provides as follows:
 

 “A witness may be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he shall be asked whether he made the statements, and if so, allowed to explain them. If the statements be in writing they shall be shown to the witness before any question is put to him concerning them.”
 

 [2]
 

 "ORS 45.590 Impeachment of own witness. The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.610.* * *.”